**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RHUB COMMUNICATIONS, INC., | Case No. 16-cv-06669-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| ROY KARON, | |
| Defendant. | [Re: ECF 20] |

Plaintiff RHUB Communications Inc. ("RHUB") brings this suit against Defendant Roy Karon ("Karon") alleging that Karon fraudulently represented his intent to take part in a joint venture and equally share profits stemming from the joint venture.[1]  Now before the Court is Karon's motion to dismiss the first amended complaint ("FAC") for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted.  Mem. P. & A. ("Mot."), ECF 20-1.  On March 2, 2017, RHUB filed an opposition to Karon's motion to dismiss the FAC.  Opposition to Mot. ("Opp'n"), ECF 25.  Karon filed a reply on March 9, 2017.  Reply Mem. Supporting Mot. ("Reply"), ECF 26.  The Court ordered the motion submitted without oral argument pursuant to Civil Local Rule 7-1(b). ECF 29.  For the reasons set forth below, the motion is GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART.

---

[1] On January 19, 2017, Karon filed a motion to dismiss the original complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief may be granted.  ECF 9.  On February 2, 2017, RHUB filed an opposition to Karon's motion and an amended complaint. ECF 16; FAC.  The Court terminated the motion to dismiss the original complaint as moot in light of the filing of the FAC.  ECF 18.

I.    BACKGROUND

    A.    Factual Background

        Starting in 2013, Karon, the sole shareholder and manager of BVS, Inc. ("BVS"), and RHUB began to negotiate a deal to jointly develop a new in-house audio/video teleconferencing system to replace Karon's "obsolete" system.  FAC ¶¶ 7-8, ECF 17.  On July 2, 2014, Karon met with RHUB's managerial employees in California, where they discussed details of their joint venture agreement, including the division of profits.  *Id.*  Thereafter, RHUB and Karon came to an oral agreement, and on August 21, 2014, RHUB and BVS entered into a separate written agreement.  *Id.* ¶ 12.  RHUB alleges that Karon fraudulently misrepresented his intent to divide the profits equally between RHUB and BVS, which RHUB claims it relied on in entering the agreement.  *Id.* ¶ 14.  RHUB purports to have expended resources on engineering and development of the product, resulting in over $1,000,000 of damages.  *Id.* ¶ 14.

        On April 4, 2015 Karon allegedly represented to RHUB's employees Larry Dorie and John Mao that he wanted to modify the original agreement, such that he and not BVS would receive 50% of the profits.  *Id.* ¶ 15.  Karon justified the profit modification based on the corporation's "future profitability."  *Id.*  RHUB alleges that Dorie and Mao agreed to these modifications based on Karon's representation regarding his rationale and incurred further expenses as a result.  *Id.* ¶¶ 16, 18.  RHUB states that Karon had a secret intent to enhance BVS's own technology in order to independently market the product without RHUB's involvement or profit sharing.  *Id.* ¶ 17.  On April 10, 2016, Karon terminated all dealings with RHUB.  *Id.* ¶ 19.  The FAC alleges a single claim for fraud.

II.    LEGAL STANDARD

    A.    Subject Matter Jurisdiction

        "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (citation omitted).

If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

## B. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). However, uncontroverted allegations in the complaint must be taken as true, *Schwarzenegger*, 374 F.3d at 800, and factual disputes contained within declarations or affidavits are resolved in the plaintiff's favor, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (internal quotation marks and citation omitted). A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation

omitted). In contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* A defendant's contacts with a *resident* of the forum state are not sufficient to establish personal jurisdiction – to satisfy due process, "the defendant's suit-related conduct must create a substantial connection *with the forum State.*" *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (emphasis added).

### C. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

### D. Rule 9(b) Fraud Pleadings

A cause of action for fraud is further subject to the heightened pleading requirements of Rule 9(b), and the party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) requires a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The plaintiff not only must set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

## III.    JUDICIAL NOTICE

Before turning to the merits of the parties' arguments, the Court addresses Karon's request for judicial notice, ECF 20-3. Karon has requested judicial notice of three documents filed in *BVS, Inc. v. RHUB Communications, Inc.*, attached to the request as Exhibits 1 through 3: (1) the Original Notice and Petition At Law; (2) the First Amended and Substituted Complaint; and (3) Memorandum Opinion and Order. RHUB does not oppose Karon's request. Karon's request for judicial notice was filed with his motion to dismiss on February 16, 2017. ECF 20. At that time, Karon referred to *BVS Inc. v. RHUB Communications, Inc.* by its case number in the United States District Court for the Northern District of Iowa, 16-cv-00065. ECF 20-3. On February 13, 2017, *BVS v. RHUB* was transferred to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1406(a) and reassigned to case number 17-cv-00673. On February 22, 2017, this Court issued an order relating *BVS Inc. v. RHUB* to the instant case. ECF 23. The documents in Karon's request for judicial notice are thus available in *BVS Inc. v. RHUB Communications, Inc.*, 17-cv-00673, at ECF 2, 28, and 32.

Judicial notice is appropriate with respect to Exhibits 1 through 3 because they are documents publicly filed with either state or federal courts. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of public record). The Court does not take judicial notice of the legal reasoning or disputed facts contained therein, but rather the existence of such allegations and arguments. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (permitting a court to take judicial notice of another court's opinion, but not the truth of the facts recited therein). Therefore, Karon's request for judicial notice is GRANTED. Furthermore, the Court takes judicial notice of the fact that *BVS v. RHUB*, 17-cv-00673, is related to the instant case and is assigned to the undersigned.

## IV.    DISCUSSION

### A.    Subject Matter Jurisdiction

RHUB relies on the presence of diversity jurisdiction to satisfy subject matter jurisdiction. To invoke diversity jurisdiction in an action involving U.S. citizens, the complaint must allege that the matter in controversy is between citizens of different states and the amount in controversy must exceed $75,000. 28 U.S.C. §1332(a)(1). Karon contends that RHUB has not properly alleged subject matter jurisdiction because the FAC fails to allege Karon's citizenship, instead, alleging only Karon's "residence." Mot. 5. In opposition, RHUB concedes the deficiency, but asserts that it can be cured by amendment.[2] The Ninth Circuit has previously held that alleging residency as opposed to citizenship is a technical defect. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1086 (9th Cir. 2014). Nevertheless, a "plaintiff should be permitted to amend a complaint to cure 'technical' defects." *Id.* (citing *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000)) (en banc).

Here, RHUB adequately alleges that the amount in controversy is greater than $75,000. FAC ¶ 1. However, this Court agrees that it lacks subject matter jurisdiction over the asserted claim because the FAC fails to allege Karon's citizenship. Thus, RHUB's FAC must be dismissed with leave to amend.

---

[2] The Court notes that this deficiency was first identified in Karon's motion to dismiss RHUB's initial complaint but remains uncured in the FAC. *Id.*; *see* Mot., ECF 9-1.

**B. Specific Personal Jurisdiction**

Karon also brings a motion under Federal Rule of Civil Procedure 12(b)(2), seeking dismissal of the action for lack of personal jurisdiction. *See generally* Mot. "The strength of contacts required [for exercising personal jurisdiction] depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). RHUB concedes that the Court does not have general jurisdiction over Karon, but contends that Karon is subject to specific jurisdiction. *See generally* Opp'n.

Karon has submitted evidence to support his claim that this court lacks personal jurisdiction over him and thus RHUB has properly submitted evidence to demonstrate personal jurisdiction over Karon. RHUB submits the affidavit of Larry Dorie, shareholder and managerial employee of RHUB, in support of personal jurisdiction. Opp'n; Dorie Decl., ECF 16-1; *see also Ranza*, 793 F.3d at 1068 ("Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." (internal quotation marks and citation omitted)).

The Ninth Circuit has established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The Court addresses each element of specific personal jurisdiction in turn.

### i. Purposeful Direction

Because RHUB alleges a cause of action against Karon for fraud, RHUB must satisfy "purposeful direction" as the first prong of the test for specific personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004)). In determining whether a defendant purposefully directs his activities at the forum state, courts apply an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *Mavrix*, 647 F.3d at 1228 (citations omitted). The "effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citations omitted).

In his motion to dismiss, Karon disputes that RHUB has established the "expressly aiming" requirement of purposeful direction. Mot. 6. Karon argues that because he did not commit a "wrongful" act, he cannot be subject to specific personal jurisdiction in California. *Id.* The Court is not persuaded that the case relied on by Karon, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, precludes a finding of personal jurisdiction in this case. 223 F.3d 1082, 1087 (9th Cir. 2000). In fact, Ninth Circuit law makes clear that "[i]n any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). Thus, the Court considers Karon's allegedly fraudulent acts in considering whether specific jurisdiction is proper.

As to the first prong of purposeful direction, the parties do not dispute that Karon "committed an intentional act." RHUB alleges that Karon placed a telephone call to RHUB's employee Larry Dorie in San Jose, California in late 2013 to discuss the replacement of BVS's in-house video teleconferencing product. FAC ¶ 7; Dorie Decl. ¶ 3. In further conversations, RHUB and Karon discussed a joint venture to develop a video conferencing product using RHUB's Turbo

Meeting technology along with technology developed by BVS (the "Click Service Product").[3]
Dorie Decl. ¶ 6.  In 2014, Karon "regularly" traveled to RHUB's offices in California to discuss
the Click Service Product and its features. *Id*. ¶¶ 7-9.  While in California in July 2014, Karon
made verbal representations to RHUB's managerial employees regarding the specific terms of the
Click Service Product. FAC ¶ 8; Dorie Decl. ¶¶ 11-12.  Karon made additional representations to
RHUB in April 2015 in California that altered the profit sharing terms of the Click Service
Product.  Dorie Decl. ¶ 20. These alleged facts support the Court's finding that Karon committed
an intentional act.

Second, the Court finds that Karon's acts described above were "expressly aimed" at
California, the forum state.  Karon argues that in order to satisfy the "express aiming"
requirement, RHUB must establish that Karon committed wrongful acts in California. Mot. 6;
Reply 1.  The Court disagrees.  Karon's exclusive reliance on *Bancroft & Masters* misstates Ninth
Circuit law on the "effects" test. 223 F.3d at 1087; Mot. 6.  Although neither party cites the Ninth
Circuit's decision in *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, that case
modified the holding in *Bancroft &Masters* and made clear that a defendant's conduct need not be
"wrongful" in order to be "expressly aimed" at the forum state.  433 F.3d at 1207.

In *Yahoo!*, the Ninth Circuit found that the defendants were subject to specific personal
jurisdiction in California based on their forum related acts that included sending a cease and desist
letter to Yahoo! at their headquarters in Santa Clara, California, and serving process on Yahoo! in
California. *Id*. at 1205.  The Ninth Circuit rejected the argument made by the *Yahoo!* defendants
that is identical to the argument advanced by Karon in the instant case.  The *Yahoo!* defendants
asserted that they were not subject to specific personal jurisdiction in California because their
actions directed at California were not tortious or otherwise wrongful. *Id*. at 1207.   Likewise,
Karon argues that the lack of "wrongfulness" of his actions shields him from the Court's
jurisdiction. Mot. 7.  The Ninth Circuit explained that although many cases using the "effects"

---

[3] The FAC and motion to dismiss briefing refer to the joint venture's product as "Click Service"
and "Quick Service" interchangeably.  For clarity, the Court refers to the product only as "Click
Service."

test, such as *Bancroft & Masters*, "will indeed involve wrongful conduct by the defendant," the "effects" test does not require in purposeful direction cases that all (or even any) jurisdictionally relevant effects be caused by wrongful acts. *Yahoo!*, 433 F.3d at 1207-08. "We do not see how we could do so, for if an allegedly wrongful act were the basis for jurisdiction, a holding on the merits that the act was not wrongful would deprive the court of jurisdiction." *Id.* Thus, the Court rejects Karon's argument that specific personal jurisdiction over him rises and falls with the underlying merits of RHUB's fraud claim.

The prima facie jurisdictional analysis requires the Court to accept the plaintiff's allegations as true. Here, according to RHUB's FAC and the supporting declaration, Karon repeatedly called by telephone, visited with, and made in-person oral representations to RHUB managerial employees at RHUB's headquarters in San Jose, California. FAC ¶¶ 8-10; Dorie Decl. ¶¶ 3, 7-9, 11, 13, 19-20. Beginning in 2013, Karon contacted RHUB to discuss the possibility of a joint venture between RHUB and BVS, and eventually Karon traveled to California to meet in person with RHUB employees to discuss the terms of the resulting Click Service Product. Dorie Decl. ¶¶ 3-11. In July 2014, Karon attended a meeting that "consumed the entire day" in California with RHUB employees and Karon's lawyer to prepare the joint venture agreement. *Id.* ¶ 13. A few months later, in November 2014, Karon allegedly reviewed the joint venture agreement for the Click Service Product in California with a member of RHUB's board of directors. *Id.* ¶ 19. Karon's acts were expressly aimed at California because they individually targeted RHUB, a corporation with its principal place of business in California, and RHUB's managerial employees located at the California facility. FAC ¶ 1; Dorie Decl. ¶ 1, 3. Karon's intentional interactions with RHUB and its employees in California were "performed for the very purpose of having their consequences felt in the forum state" and cannot be considered "untargeted negligence." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002).

To satisfy the third and final element of the "effects" test, the defendant must have allegedly caused harm that the defendant knows is likely to be suffered in the forum state. *Mavrix*, 647 F.3d at 1228. Karon argues that RHUB cannot establish this prong because Karon's acts do not amount to fraud under California law, and thus RHUB did not suffer actionable harm in

California. Mot. 7. Karon's argument fails for two reasons. First, as discussed above, Karon's "wrongfulness" argument is based on an incorrect understanding of Ninth Circuit law. RHUB need not establish each element of fraud in order to establish purposeful direction. *See Yahoo!*, 433 F.3d at 1208. Moreover, "a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Dole Food*, 303 F.3d at 1113. Because RHUB's principal place of business is in California and RHUB alleges that it has suffered harm based on Karon's conduct, this element is satisfied.

To be clear, the Court does not limit its jurisdictional analysis to Karon's contacts with RHUB, a California company. The proper analytical focus remains on Karon's contacts with California itself. *See Calder v. Jones*, 465 U.S. 783, 788 (1984)("In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation.") (internal quotation marks and citation omitted). Karon has contacts with California that go well beyond the contacts of the petitioner in *Walden v. Fiore*. 134 S. Ct. 1115 (2014). In *Walden*, a Georgia police officer located at an airport in Georgia searched and seized cash from respondents who were airline passengers waiting for their connecting flight home to Nevada. *Id*. at 1119. The Supreme Court (Thomas, J.) held that Nevada had no jurisdiction over the police officer because "none of petitioner's challenged conduct had anything to do with Nevada itself." *Id*. at 1125. The mere fact that the officer's conduct affected or allegedly injured persons with strong ties to Nevada was insufficient to confer personal jurisdiction. *Id*. at 1126. The Court made clear that the officer had no jurisdictionally relevant contacts with the forum because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id*.

Here, Karon reached beyond his home state and into California by initiating contact with RHUB employees located in California. Dorie Decl. ¶3. Karon then allegedly traveled to California "regularly" to discuss the joint venture agreement and development of Click Service. FAC ¶¶ 8-10; Dorie Decl. ¶¶ 7-9, 11, 13, 19-20. In fact, Karon made oral representations in California that actually form the basis of RHUB's fraud claim. Thus, the alleged intentional tort itself occurred in California. It is Karon's significant contacts with California, not RHUB's own connection to California, that are decisive.

1    Based on the foregoing, the FAC and supporting declaration establish that Karon

2    "purposefully directed" his activities at California. *Schwarzenegger*, 374 F.3d at 802. The Court

3    next considers whether the remaining requirements for specific personal jurisdiction are met in

4    this case.

5              **ii.    Arising Out of Forum-Related Activities**

6    As to the second prong of the specific personal jurisdiction test, the Court finds that

7    RHUB's claims arise out of and are related to Karon's California-related activities. Karon

8    presents no argument that RHUB has failed to satisfy this prong. *See generally*, Mot. In

9    determining whether a plaintiff's claims arise out of the defendant's forum-related activities, the

10   Ninth Circuit applies a "but-for" test. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

11   Therefore, the question the Court must answer is, but for Karon's contacts with California, would

12   RHUB's claim against Karon have arisen? *See Mattel, Inc. v. Greiner and Hausser GmbH*, 354

13   F.3d 857, 864 (9th Cir. 2003).

14   The Court finds that RHUB's fraud claim could not have arisen but for Karon's contacts

15   directed at RHUB and its managerial employees in California. Karon's contacts with RHUB and

16   its employees in California are integral to RHUB's fraud claim, which is based on Karon's alleged

17   intentional misrepresentations made in California regarding the terms of the Click Service

18   Product. FAC ¶¶ 8-9; Dorie Decl. ¶¶ 11, 20. But for Karon reaching out to RHUB's employees in

19   California, Dorie Decl. ¶ 3, and his active involvement "at the early stages coming to California

20   regularly" to develop the joint venture, *Id.* ¶ 7, the basis for RHUB's fraud claim would not exist.

21   Thus, RHUB has satisfied the second requirement of the specific personal jurisdiction test that its

22   fraud claim "arises out of or relates to" Karon's contacts with California.

23             **iii.   Reasonableness**

24   The third and final prong of the specific jurisdiction test ensures that the exercise of

25   personal jurisdiction comports with fair play and substantial justice. Jurisdiction is presumed to be

26   reasonable once the first two prongs have been met. *See Schwarzenegger*, 374 F.3d at 802. The

27   burden then shifts to the defendant "to 'present a compelling case' that the exercise of jurisdiction

28   would be unreasonable and therefore violate due process." *CollegeSource, Inc. v. AcademyOne*,

12

*Inc.*, 653 F.3d 1066, 1079 (9th Cir.2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).  In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the Court considers seven factors under Ninth Circuit case law: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See, e. g., CollegeSource*, 653 F.3d at 1079 (quoting *Dole Food*, 303 F.3d at 1114).

Karon argues that the second factor, the burden on the defendant of defending in the forum, weighs against exercising jurisdiction over Karon in California. Mot. 7-8.  Karon argues that jurisdiction is unreasonable in California because he is 75 years old, lives in Iowa and Arizona, and has "few contacts" with California.  *Id.* 7.  Karon further describes his "weak contacts" with California including that he owns no real property in California, he has never resided in California, he does not own any interest in California businesses, and he has "never been party to litigation in courts located in the State of California." *Id.* 7-8.

RHUB argues that the exercise of jurisdiction is fair and reasonable because the related case pending before the Court, *BVS Inc. v. RHUB Communications Inc.*, 17-cv-00673 (Filed May 3, 2016), will require Karon to appear before the Court. Opp'n 5-6.  Karon admits that he is the sole shareholder and President of BVS Inc., the plaintiff in the related case before the Court. Karon Decl. ¶ 3, ECF 20-2; Mot. 8.  The Court finds that although Karon is not a party to the related case in his personal capacity, Karon's involvement on behalf of his company, BVS, weighs against a finding that the exercise of jurisdiction over Karon is unreasonable in the instant case.

Although Karon does not present arguments directed at any of the other "reasonableness" factors, the Court notes that the remaining factors justify the exercise of jurisdiction over Karon. First, Karon's business relationship with RHUB, a California corporation, and his regular travel to California should have reasonably apprised Karon of the potential for litigation in California arising from his relationship with RHUB.  Second, California has an interest in adjudicating this

13

case involving a California corporation with its principal place of business in this district. Furthermore, the existence of the related case in this Court supports a finding that the exercise of jurisdiction will facilitate the most efficient judicial resolution of the controversy. The Court finds that Karon has not made a "compelling case" that the Court's exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802.

For the foregoing reasons, Karon's motion to dismiss for lack of personal jurisdiction is DENIED.

### C. Failure to State a Claim and to Plead Fraud with Particularity

The FAC states a single cause of action for fraud against Karon. Karon moves to dismiss under Rule 12(b)(6) for failure to state a claim and failure to plead fraud with particularity as required by Rule 9(b). Under California law, to state a claim for fraud a party must plead facts to sufficiently allege five elements: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) the speaker's knowledge of falsity (scienter); (3) the intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See, e.g.*, *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996). While a misrepresentation is generally only actionable if the misrepresentation concerns past or existing material facts, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158 (1991), a promise to do something in the future may constitute intentional promissory fraud if it was made without any intention to perform, *Lazar*, 12 Cal.4th at 638.

A cause of action for fraud is further subject to the heightened pleading requirements of Rule 9(b), and the party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, a "heightened pleading standard is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

Karon argues that RHUB fails to allege adequately the falsity of Karon's representations, RHUB's reliance on the alleged misrepresentations, causation, and damages. Mot. 9. In its opposition to the motion to dismiss, RHUB presents a single conclusory argument and then quotes the FAC for nearly three pages. Opp'n 6-8. RHUB's only argument is that the FAC shows

14

"specific intentional fraud made to induce Plaintiff to act in reliance on the fraud causing Plaintiff to suffer reliance damages." Opp'n 6. RHUB's recital of the elements of fraud does nothing to assist the Court in its determination that the fraud claim satisfies Rule 8 and Rule 9(b). For the reasons below, the Court finds that the allegations in the FAC fail to state a claim upon which relief can be granted.

### i. Promissory Fraud

Karon argues that the FAC fails to plead an actionable misrepresentation because RHUB's allegations do not establish the falsity of Karon's alleged statements. Mot. 9-10. In order to allege fraud with the particularity required by Rule 9(b), "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original); *see also Fecht v. Price Co.*, 70 F.3d 1078, 1084 (9th Cir. 1995).

RHUB alleges that Karon made oral statements to RHUB's managerial employees in California on July 2, 2014.[4] FAC ¶ 8. Those representations included (1) that Karon's company BVS would enter into a joint venture with RHUB to integrate RHUB's technology with BVS software to develop an audio/video conferencing system known as Click Service; (2) the profits from the sale of Click Service would be divided equally between RHUB and Karon;[5] and (3) there would be a worldwide multimillion dollar market for Click Service, resulting in a multimillion dollar return to RHUB. *Id*. ¶¶ 8-9. RHUB alleges that Karon made a further representation on or about April 4, 2015, when Karon told RHUB employees that he "wished to modify the joint venture agreement" to divide profits equally between Karon and RHUB's shareholders, Mao and

---

[4] This date in the FAC is inconsistent with RHUB's declaration of Larry Dorie in opposition to the motion to dismiss, which states Karon made these representations on April 1, 2014 and July 29, 2014. Dorie Decl. ¶¶ 10-11.

[5] The Court notes that paragraphs 8(b) and 14 of the FAC are inconsistent. The FAC alleges that Karon represented to RHUB on July 2, 2014 that the profits from the sale of the Click Service Product "would be divided equally between Plaintiff and Karon." FAC ¶ 8(b). That representation is then described as a "fraudulent misrepresentation that the [Click Service Product's] revenue would be divided equally between RHUB and BVS, Inc." *Id*. ¶ 14.

15

Dorie. *Id.* ¶ 15. RHUB alleges that these representations were "false" because Karon "had no intent to have a joint venture" or "share equally in the profits" from Click Service. *Id.* ¶¶ 10, 17. Rather, Karon had a "secret intent" to induce RHUB to develop its Core TurboMeeting technology to the point where BVS or "an alternative outside source" could develop the technology further to integrate it with BVS's own software. *Id.* RHUB alleges it learned of Karon's "secret intent" when Karon terminated all dealings with RHUB on April 10, 2016. *Id.* ¶ 19.

Karon argues that RHUB cannot adequately allege that the above representations are false because the FAC does not establish whether the Click Service Product ever generated any profits to share. Mot. 10. Karon argues the representations are non-actionable "opinions" about the potential market for a potential product. Reply 1-2 (citing *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 230, 248 (2011). RHUB does not present any arguments or cite to any law on this point, but RHUB's fraud claim appears to be based on a theory of promissory fraud, which Karon does not address. Opp'n 3 (describing RHUB's reliance on Karon's "false promise" to jointly develop Click Service and share profits). When an intentional misrepresentation claim is based on an allegedly false promise, that claim is also known as a "promissory fraud" claim.

Promissory fraud is a subspecies of fraud and deceit. A plaintiff asserting a claim for promissory fraud must plead and prove that the defendant made a promise to him that the defendant had no intention of performing. *See Lazar*, 12 Cal. 4th at 638. ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.") However, like all averments of fraud, allegations of promissory fraud must be stated with particularity in order to satisfy Rule 9(b). As explained above, the Ninth Circuit has consistently held that Rule 9(b) requires that "circumstances indicating falseness be set forth." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548. Thus, RHUB must offer "an explanation as to why the statement or omission complained of was false or misleading." *Id.* at 1548.

Although RHUB identifies specific dates, locations and content associated with some of Karon's alleged promises, "merely pointing to statements and alleging their falsity does not satisfy

Rule 9(b)." *See Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) (citing *In re GlenFed, Inc. Sec. Lit.*, 42 F.3d 1541, 1547 (9th Cir.1994)). The FAC pleads only that Karon made various representations to RHUB employees, and that Karon "had no intent to form a joint venture with RHUB" and "had a secret intent to induce RHUB" to further enhance its technology. FAC ¶¶ 10, 17. While intent itself may be alleged generally under Rule 9(b), the element of falsity requires the plaintiff to point to *facts* which show the statement was false at the time it was made. Once the plaintiff has established falsity, the plaintiff may aver intent generally. *See Richardson*, 2000 WL 284211, at *5. RHUB alleges no facts beyond its conclusory allegations of falsity in order to demonstrate that Karon's statements were false when made. Rather, the FAC repeatedly labels Karon's statements as "false" or "fraudulent," without further support. *See, e.g.*, FAC ¶¶ 2, 3, 8, 11, 14, 15.

Other than Karon's "secret intent," the only allegation in the FAC to suggest Karon's promises were false is the allegation that Karon eventually terminated all dealings with RHUB on April 10, 2016. FAC ¶ 19. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548 (plaintiff may not "set forth conclusory allegations of fraud ... punctuated by a handful of neutral facts.") (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). The Court is left to infer that Karon never performed his promises to RHUB, although there are no *facts* to suggest Karon's statements must have been false *when he made them*.[6] *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1549; *see also Fecht*, 70 F.3d at 1083 (holding Rule 9(b) requires plaintiff to allege "sufficient evidentiary facts" to support a finding that the challenged statements were false when made). Because the FAC does not support an inference that Karon made the alleged statements with no intention of performing, RHUB's promissory fraud claim against Karon is not plausible.

For the foregoing reasons, the Court finds that the FAC fails to allege a cause of action for

---

[6] The Court also notes that under California law, nonperformance of a promise alone does not support a finding of promissory fraud. *See Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30, 702 P.2d 212, 219 (1985) ("[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise."); *Jacobson v. Mead*, 12 Cal. App. 2d 75, 82, 55 P.2d 285, 288 (1936) ("The law is thoroughly settled that mere failure to carry out a promise does not prove fraud in the making of it."); *see also UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1110 (C.D. Cal. 2015) (collecting cases).

promissory fraud. The FAC's bare allegations that Karon's statements are "false" and that he harbored a "secret intent" do not satisfy Rule 9(b)'s particularity requirement, or even meet the less stringent requirements of Rule 8(a). *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

### ii. Fraud by Concealment

Moreover, to the extent RHUB's fraud claim is based on a theory of non-disclosure or concealment, the FAC also fails to allege a plausible claim. The elements of an action for fraud and deceit based on concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248, 129 Cal. Rptr. 3d 874, 890 (2011). Fraud by concealment remains subject to Rule 9(b) and must be pleaded with specificity rather than with "general and conclusory" allegations. *Id.*

It is not clear from the FAC or RHUB's opposition if RHUB is pursuing a theory of fraudulent concealment. Although RHUB's primary theory appears to be promissory fraud, the FAC also alleges that Karon "concealed" his "secret intent" from RHUB. FAC ¶ 18. Karon argues that the FAC does not state a claim for fraudulent concealment because the FAC alleges no facts imposing a duty on Karon to disclose material facts to RHUB. Mot. 10. Reply 2. RHUB does not address Karon's argument in its opposition to the motion to dismiss.

"To maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts." *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal.App.4th 803, 831, 182 Cal.Rptr.3d 888 (2015) (citations omitted). The Court agrees with Karon that RHUB's pleading is deficient with regard to a claim for fraudulent concealment. RHUB alleges that Karon made statements to RHUB employees regarding the Click Service Product when he actually harbored a

"secret intent" which he concealed from RHUB. FAC ¶¶ 10, 17. The FAC does not set forth any particularized facts to establish whether Karon had a duty to disclose his "secret intent" or any other material facts to RHUB. Thus, the FAC fails to plead fraud by concealment with the specificity required by Rule 9(b). *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (holding that for a fraud claim to survive a motion to dismiss, the allegations "must be specific enough to give defendants notice of the particular conduct which is alleged to have constituted the fraud so that they can defend against the charge and not just deny that they have done anything wrong.") (citation and quotation omitted).

### iii. Causation and Damage

As with any tort, a plaintiff seeking to recover for fraud must plead that the defendant's tortious conduct "proximately caused" the plaintiff's damages. *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1818, 52 Cal. Rptr. 2d 650 (1996) ("Deception without resulting loss is not actionable fraud.") The FAC alleges that Karon's false representations "did cause RHUB to incur engineering and development costs in a sum not yet ascertained but in excess of one million dollars." FAC ¶ 11.[7] Karon argues that RHUB's fraud claim fails to state a claim because any alleged harm suffered by RHUB was the result of the breakdown in the contractual relationship between the parties, and therefore was not proximately caused by Karon's representations. Mot. 11-13.

Karon relies on *Service by Medallion, Inc. v. Clorox Co.* to support his arguments that (1) RHUB's claim of damages is not pled with particularity; and (2) the alleged damages do not result from RHUB's reliance on Karon's statements. Mot. 11-13; 44 Cal. App. 4th at 1818 ("Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown."). RHUB contends that Karon's reliance on *Service by Medallion* is "misplaced." Opp'n 8. However, RHUB does not address Karon's argument directed at failure to plead causation and damage. The Court agrees

---

[7] The FAC also appears to allege that RHUB incurred further expense and damage by relying on Karon's representations, without awareness of Karon's "secret intent" which he "concealed." FAC ¶ 18. RHUB must satisfy the element of "resulting damage" whether its theory of fraud is based on false representations or concealment.

United States District Court
Northern District of California

with Karon that the FAC fails to allege that RHUB's damages were proximately caused by Karon's statements or concealment, rather than the breakdown in the parties' contractual relationship. *See Service by Medallion*, 44 Cal. App. 4th at 1808.

In *Service by Medallion*, Clorox allegedly induced Medallion to enter into a contract for janitorial services. 44 Cal.App.4th at 1812. Medallion alleged that before the parties entered into the contract, Clorox made representations that it knew to be false and made promises it did not intend to perform. *Id*. The parties performed the contract for several months until Clorox terminated the parties' contractual relationship. *Id*. Medallion then sought to recover for the materials it invested in reliance on Clorox's "representations and promises" made before entering into the contract. *Id*. at 1818. Medallion brought a single claim for fraudulent inducement against Clorox, and Clorox demurred. *Id*. The trial court sustained Clorox's demurrer and the Court of Appeal affirmed the judgment. *Id*. The court held that Medallion's pleading was defective on the elements of "causation and damage" because "[t]he expenses Medallion incurred in preparing to perform its contractual duty, though allegedly responsive to Clorox's promise, were essential to its subsequent performance of the service agreement and therefore could not have been considered detrimental." *Id*. The court held it was "the termination" of the contract and not the misrepresentation that resulted in Medallion's alleged harm. *Id*.

Here, the FAC alleges the existence of an oral contract to develop the Click Service Product, and that RHUB incurred expenses in the performance of its obligations under the agreement. FAC ¶ 11 (alleging that RHUB's employees "did agree to the above described proposal…and did cause RHUB to incur engineering and development costs"). The FAC repeatedly refers to this "joint venture," and RHUB admits in its opposition that "a joint venture agreement between RHUB and BVS, Inc was prepared for the development of the Click Service product and for filing with the California Secretary of State," and further, that the parties repeatedly discussed the terms of the joint venture agreement. Opp'n 3. Ultimately, RHUB contends that Karon "terminated the joint venture agreement." *Id*.

Apart from alleging that RHUB continued to perform the terms of its oral contract with Karon, the FAC does not allege any damages proximately caused by Karon's misrepresentations.

*Service by Medallion* makes clear that under California law, continued performance of an underlying contractual obligation is not detrimental reliance. 44 Cal.App. 4th at 1818–19. RHUB's engineering and development expenses were incurred as part of its performance under the joint venture agreement, which is not detrimental. RHUB only considered these expenses "losses" when Karon terminated the agreement. *Id*. Thus, the FAC fails to allege that its damages constitute detriment proximately caused by Karon's misrepresentations or concealment.

For the foregoing reasons, Karon's motion to dismiss the FAC for failure to state a claim is GRANTED.

### D. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Although RHUB has failed to plead its fraud claim with sufficient particularity, it is not clear that it would be unable to do so if given leave to amend. Accordingly, the Court GRANTS IN PART Defendant's motion to dismiss WITHOUT PREJUDICE. The FAC is dismissed with leave to amend the deficiencies articulated above.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Karon's motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED WITH LEAVE TO AMEND on the basis that the FAC fails to allege Karon's citizenship.

(2) Karon's motion to dismiss the FAC for lack of personal jurisdiction is DENIED.

21

United States District Court
Northern District of California

   (3)  Karon's motion to dismiss is GRANTED WITH LEAVE TO AMEND on the grounds that the FAC fails to state a claim for fraud.

RHUB must file an amended complaint on or before August 28, 2017.[8]

Dated: August 7, 2017

            _____

            BETH LABSON FREEMAN
            United States District Judge

---

[8] The Court notes that RHUB filed a motion for leave to file a second amended complaint on July 25, 2017. ECF 33. The proposed second amended complaint ("SAC") alleges an additional cause of action against Karon for interference with RHUB's contractual relationship with BVS. That motion is not fully briefed. Karon's time to respond is extended by 5 days to allow counsel the opportunity to meet and confer to determine whether the parties can agree to allow the amendments set forth in the proposed SAC along with amendments required by this order. If the parties so stipulate, it will be without prejudice to Defendant's right to file a motion to dismiss the SAC.